IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RANDY LYN MCKINNEY, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-96-0177-S-BLW |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| GREG FISHER, Warden,[1] | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |
| _____ | ) | |

Currently before the Court in this capital habeas case is Respondent's contention that several of Petitioner Randy McKinney's claims in his Second Amended Petition are procedurally defaulted. The parties have submitted supplemental briefing, the issues are now ripe, and the Court is prepared to rule.

For the reasons set forth more fully herein, the Court concludes that the following claims are procedurally defaulted, without a showing of cause and prejudice: Claims 1(b)(c)(e)(g)-(p), 2, 4, 8, 9, 17, 18 (as it relates to error at trial), 19, 20, 21, 22, 23, 24, 25 (trial claim), 26, 27, 28, 33, 34. The Court further concludes that Claim 7 is procedurally defaulted, but the Court will reserve its ruling on the cause and prejudice issue with respect to that claim.

---

[1] Greg Fisher, the current warden of the Idaho Maximum Security Institution, is substituted for Dave Paskett, per Federal Rule of Civil Procedure 25(d).

**Memorandum Decision and Order - 1**

## BACKGROUND

In April 1981, Robert Bishop was shot to death near Arco, Idaho.  The State charged Randy McKinney and his companion, Dovey Small, with first degree murder, conspiracy to commit murder, robbery, and conspiracy to commit robbery. A jury later found McKinney guilty as charged, and on March 27, 1982, the district court sentenced him to death for the murder conviction.  In a separate trial, Small was also found guilty.  She received a fixed life sentence for Bishop's murder.

McKinney directly appealed the judgment of conviction and death sentence to the Idaho Supreme Court, which affirmed.  *State v. McKinney*, 687 P.2d 570 (Idaho 1984) (*McKinney I*).  In November 1984, McKinney filed a Petition for Post-Conviction Relief in state district court, which he amended in March 1985. *State's Lodging D-22*, pp. 27-44.  After conducting an evidentiary hearing focusing primarily on issues of ineffective assistance of counsel, the district court denied all relief.  *State's Lodging D-22*, pp. 168-181.  On appeal, the Idaho Supreme Court affirmed.  *McKinney v. State*, 772 P.2d 1219, 1222 (Idaho 1989) (*McKinney II*).

In 1989, McKinney filed his first federal Petition for Writ of Habeas Corpus. *See McKinney v. Arave,* Case No. CV 89-1182-HLR.  The Court subsequently dismissed the Petition, without prejudice, so that McKinney could pursue additional claims in state court in a second post-conviction proceeding.  In 1996,

**Memorandum Decision and Order - 2**

the state district determined that McKinney's second post-conviction claims were procedurally barred under state law. *State's Lodging F-31*, pp. 438-55, 504-514. McKinney appealed the dismissal to the Idaho Supreme Court.

On April 23, 1996, while his state appeal was pending, McKinney initiated his second federal action by submitting a statement of habeas issues, a request for the appointment of counsel, and a request for an order staying the execution. (Docket No. 2 & 3.)  He followed these initial filings a year later with a Petition for Writ of Habeas Corpus, which he amended to contain only exhausted claims. (Docket No. 22.)  The Court thereafter granted McKinney's request to hold the federal matter in abeyance until the state court matter had concluded.  (Docket No. 21.)  In 1999, the Idaho Supreme Court issued its decision, affirming the district court. *McKinney v. State*, 992 P.2d 144 (Idaho 1999) (*McKinney III*).  This Court then lifted the stay of the federal case.

On April 28, 2000, McKinney filed a Second Amended Petition for Writ of Habeas Corpus, containing 35 claims for relief.   Respondent submitted his Answer, contending, in relevant part, that the majority of McKinney's claims were procedurally defaulted and should be dismissed. *See Answer*, pp. 30-43.  The parties engaged in limited discovery, but before the Court resolved any procedural issues, it stayed the case a second time while McKinney returned to state court to

present claims under *Ring v. Arizona*, 536 U.S. 584 (2002).  The Court recently lifted the stay and permitted the parties to prepare supplemental briefing on the procedural default issues.

## II.

## THE EXHAUSTION REQUIREMENT

A habeas petitioner must have first exhausted his state court remedies before a federal court can grant relief on a constitutional claim.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that no state court remedy is available when he arrives in federal court.  *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).  In this case, McKinney has satisfied the exhaustion requirement because there are no state court remedies available to him in which to raise his current habeas claims.  The pertinent initial question, then, is which claims have been *properly* exhausted.  *See Boerckel*, 526 U.S. at 848.

To exhaust a habeas claim properly, a habeas petitioner must invoke one complete round of the state's established appellate review process, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review.  *Baldwin v. Reese*, 541 U.S. 27 (2004).  The mere

**Memorandum Decision and Order - 4**

similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim, and general references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (similarity of claims is insufficient); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (appeal to broad principles insufficient).  Instead, the petitioner must ordinarily cite the constitutional provision that supports his claim, federal cases that apply the constitutional rule, or state court cases that clearly analyze the federal claim.  *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

A. <u>Fairly Presented Claims</u>

<u>Claims 1(a)(d)&(f)–Ineffective Assistance of Trial Counsel</u>

McKinney's first ground for relief includes several allegations of ineffective assistance of trial counsel, which he has listed as Claims 1(a) through 1(p).

The Court has reviewed the state court record and has determined that McKinney fairly presented claims of ineffective assistance of counsel during the appeal from the denial of his first application for post-conviction relief in 1989. But despite raising several broad-based claims in the district court, McKinney limited his allegations on appeal to the following: (1) trial counsel's failure to

object to the jury handling the murder weapon during trial; (2) trial counsel's

failure to correct misinformation in the PSI regarding an incident in Bullhead City,

Arizona; and (3) trial counsel's failure to investigate and present mitigating

evidence at the sentencing hearing regarding McKinney's childhood physical,

sexual, and drug abuse.  *See State's Lodging E-26*; *McKinney II*, 772 P.2d at 1126-

28.  These allegations, which McKinney framed as violations of the Sixth

Amendment, correspond to McKinney's current habeas claims 1(a), 1(d), and 1(f)

(but limited to trial counsel's failure to investigate and present evidence of child

abuse at sentencing).[2]  McKinney's failure to raise any additional claims of

ineffective assistance during his first post-conviction appeal means he did not

satisfy the requirement of fair presentation with respect to those claims.  *See*

*O'Sullivan v. Boerckel*, 526 U.S. at 842 (petitioner must invoke one complete

round of appellate review).

   The Court, moreover, is not persuaded by McKinney's argument that the

Idaho Supreme Court "reached down" to the filings in the district court and

considered the other allegations.  Instead, the Idaho Supreme Court merely noted,

as an introductory matter, that it agreed with the district court's procedural

---

[2]  The parties dispute whether McKinney also relied upon the Fourteenth Amendment in state court.  The Sixth Amendment has been made applicable to the states through the due process clause of the Fourteenth Amendment, and, to that extent only, McKinney's Sixth Amendment claim necessarily included a Fourteenth Amendment component.

**Memorandum Decision and Order - 6**

rejection of some of McKinney's *non*-ineffective assistance of counsel claims. *McKinney II*, 772 P.2d at 1220.  Additionally, when the Idaho Supreme Court declared at the end of its opinion that the "remaining assignments of error" were without merit, it was referring to the remaining assignments of error in McKinney's appellate brief, which did not include additional claims of ineffective assistance.  *Id.* at 1222.

Claim 5–Violation of Right to Confrontation

In Claim 5, McKinney contends that his right to confrontation was violated when the trial court permitted the prosecution to use portions of Dovey Small's deposition testimony against him at trial.  He further contends that the state court's consideration of the deposition testimony during the sentencing proceeding violated his constitutional right to a reliable capital sentencing hearing.  *See Amended Petition*, pp. 21-22.  McKinney fairly presented the trial claim to the Idaho Supreme Court during his direct appeal.  *See State's Lodging* C-18, p. 44 (arguing that "[t]he reading of the deposition denied McKinney his Sixth Amendment, United States Constitution, right to confront the witnesses against him").  Though McKinney did not raise the sentencing claim, it was considered by the Idaho Supreme Court as part of its mandatory sentencing review, as discussed below.

**Memorandum Decision and Order - 7**

Claim 6–Prosecutorial Misconduct

In this claim, McKinney contends that his constitutional rights were violated by the prosecutor's allegedly inflammatory and prejudicial statements to the jury. The state court record indicates that McKinney raised a prosecutorial misconduct claim during his direct appeal, asserting that the purported misconduct violated his right to a "fair, impartial trial."  *State's Lodging C-18*, p. 23.  Although he did not rely directly upon a provision of the federal constitution, McKinney did cite state court decisions that recognized the "fundamental" nature of such a claim and applied the constitutional harmless error standard derived from *Chapman v. California*, 386 U.S. 18 (1967).  *See State's Lodging C-18*, pp. 45-49 (*citing, e.g., State v. Garcia*, 594 P.2d 146, 149 (Idaho 1979).  But McKinney also appears to include additional factual instances of misconduct here that he did not raise in his state court appellate brief.

Whether McKinney fairly presented all or part of Claim 6 on direct appeal is a close question, but the Court need not grapple with the exhaustion issue extensively; McKinney presented the current constitutional claim in his second post-conviction action, and the Idaho Supreme Court declined to review the issue, noting that McKinney actually raised the claim on direct appeal.  *McKinney III*, 992 P.2d at 156; *State's Lodging I-47*, p. 44 n.8; *State's Lodging F-30*, p.197.

**Memorandum Decision and Order - 8**

Given that the purpose of the exhaustion requirement is to allow the state courts the first opportunity to pass on a federal claim, and in light of the Idaho Supreme Court's decision that it had already addressed the issue and did not wish to do so again, this Court will resolve any ambiguity in McKinney's favor and find that Claim 6 has been properly exhausted.

Claim 12–Unconstitutional Handcuffing in the Jury's Presence

McKinney raised this claim during his direct appeal.  *State's Lodging C-18*, pp. 39-42.  Although he failed to rely upon a specific provision of the federal constitution, he cited a state court case, *State v. Crawford*, 577 P.2d 1135 (Idaho 1978), that analyzed the issue as one arising under the due process clause of the Fourteenth Amendment.  *State's Lodging C-18*, pp. 40-42.  The citation to a state court case that clearly analyzes the constitutional issue is sufficient to give the state courts a fair opportunity to pass on the federal claim.  *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

Claim 13–Disproportionate Sentences as Applied

McKinney alleges that the trial court and the Idaho Supreme Court violated his Eighth and Fourteenth Amendment rights because: (1) his death sentence is disproportionate as compared to Dovey Small's sentence; and (2) his sentence is disproportionate as compared to other similarly situated defendants, particularly

**Memorandum Decision and Order - 9**

defendants in the same judicial district.  *See Amended Petition*, pp. 31-32.

McKinney raised the first part of this claim in the Idaho Supreme Court during his

direct appeal.  *State's Lodging C-18*, p. 56.  McKinney raised the second part of

this claim during the appeal from the denial of his first post-conviction action, and

it was denied on the merits.  *State's Lodging E-26*, pp. 24-31; *McKinney II*, 772

P.2d at 1222 (rejecting, as without merit, the "remaining assignments of error").

>  Claim 35–Unreasonable Delay in State Courts

In Claim 35, McKinney contends that his stay on death row has lengthened

to the point that the State is now violating his right to be free from cruel and

unusual punishment under the Eighth Amendment.  The Idaho Supreme Court

reached the merits of this issue during the 1999 appeal from the dismissal of

McKinney's second post-conviction action.  *McKinney III*, 992 P.2d at 151.

The Court is not persuaded by Respondent's argument that the Idaho

Supreme Court alternatively relied upon a valid state procedural bar to reject this

claim.  Though the state court noted, in passing, that a six-year delay in asserting

the claim was "excessive," it also declared that it had resolved the issue on "other

grounds," i.e., the merits.  *Id*. at 151 n.2.  The claim has been properly exhausted.

> B.   Implicitly Reviewed Claims

> 1.   *Beam v. Paskett* and Sentencing Claims

In every case in which a death sentence is imposed, the Idaho Supreme Court has a statutory duty to review the sentence regardless whether the defendant has filed an appeal.  *See* Idaho Code § 19-2827.  Relying upon this automatic statutory review, a panel of the Ninth Circuit Court of Appeals has determined that the Idaho Supreme Court considers certain constitutional sentencing errors during the direct appeal, regardless whether the petitioner fairly presented the claims. *Beam v. Paskett*, 3 F.3d 1301 (9th Cir. 1993) *partially overruled on other grounds by Lambright v. Stewart,* 191 F.3d 1181, 1187 (9th Cir. 1999).  In so holding, the court noted that "the court's affirmance of the defendant's sentence after mandatory review constitutes at least an implicit rejection of claims of error that fall within its obligatory review even if the defendant has not raised those claims with specificity."   *Beam* 3 F.3d at 1306.  The *Beam* court further determined that any subsequent state procedural bar "depends upon an antecedent determination of federal law and does not constitute an independent and adequate state ground" to prevent federal habeas review.  *See id.* at 1307.  Thus, whether *Beam* is interpreted as carving out a special category of proper exhaustion for "implicitly" considered sentencing claims, or whether *Beam* creates an exception to the procedural default of such claims, the practical effect is that sentencing claims that fall within its ambit will not be barred from review in federal habeas.  *See Hoffman v. Arave*, 236

**Memorandum Decision and Order - 11**

F.2d 523, 536 (9th Cir. 2001) (reaffirming *Beam*).

The scope of habeas review under *Beam*, however, is no broader than the Idaho Supreme Court's automatic review, which is limited to the imposition of the death sentence in the particular case in front of the appellate court.  *See Beam*, 3 F.3d at 1306.  In particular, constitutional challenges to the choice of legal standards, the determination of fact, and the application of law to fact during the sentencing proceeding all fit within the *Beam* rationale.  On the other hand, claims that make a broad-based constitutional challenge to Idaho's death penalty process, are based on matters outside of the record before the Idaho Supreme Court, or allege that the Idaho Supreme Court itself erred during its direct or post-conviction review, are not encompassed by Idaho Code § 19-2827.[3]

Based upon these principles, the Court concludes that the following constitutional sentencing claims were considered and denied on the merits by the Idaho Supreme Court as part of its mandatory review:

Claim 3:  The district court failed to consider relevant mitigating evidence;

---

[3]  In addition, as the Court has noted in other capital habeas cases, it continues to question the reasoning upon which *Beam* is based.  The Court doubts that the Idaho Supreme Court has truly had a fair opportunity to pass on constitutional sentencing claims that, as a practical matter, were not revealed until the petitioner arrived in federal court.  Such a practice seems antithetical to the comity and federalism principles that support the exhaustion requirement.

In any event, *Beam* is still controlling law in this jurisdiction, and until it is expressly overruled, or Idaho narrows its mandatory review, this Court must follow *Beam*.

**Memorandum Decision and Order - 12**

<u>Claim 5</u>:  The use of the Dovey Small's deposition during the sentencing proceeding violated the Eighth Amendment;

<u>Claim 10</u>:  McKinney was denied his constitutional right to jury factfinding in sentencing;

<u>Claim 11</u>: The State failed to give McKinney adequate notice of the aggravating circumstances;

<u>Claim 14</u>:  The district court improperly weighed the mitigating circumstances against the single aggravating factor and incorrectly believed it was required to impose a death sentence;

<u>Claim 15</u>: The district court improperly relied upon the same evidence that supported the murder conviction to find the aggravating factor;

<u>Claim 16</u>:  The district court improperly considered evidence from Dovey Small's trial during the sentencing proceeding;

<u>Claim 18</u>: The district court failed to appoint a mental health expert to assist the defense during the sentencing proceeding (the trial aspect of this claim was not implicitly considered by the Idaho Supreme Court);

<u>Claim 25</u>: The district court erred in considering a prior, unsubstantiated murder when it imposed the death sentence (the trial aspect of this claim was not implicitly considered);

<u>Claim 29</u>: The district court imposed a mandatory death sentence (appears to be duplicative of Claim 14);

<u>Claim 30</u>:  The district court's consideration of protected behavior to impose death sentence was unconstitutional;

<u>Claim 31</u>:  McKinney's unwarned statements in the PSI violated his constitutional rights;

<u>Claim 32</u>:  The district court failed to consider alternative sentences to the death penalty.

**Memorandum Decision and Order - 13**

All other claims that may have a sentencing component to them do not fall within the scope of review as framed by *Beam*.[4]

### 2.    Unassigned Trial Errors are not Implicitly Reviewed

McKinney argues that the Idaho Supreme Court has broadened its mandatory review responsibilities in capital cases to encompass all constitutional errors that occurred at trial, whether or not they are raised on appeal.  The Court disagrees.  The general rule in Idaho is that the burden is on the appellant to demonstrate error on appeal, and the appellate court will not independently search the record for error.  *See, e.g., Woods v. Crouse*, 620 P.2d 798, 799 (Idaho 1980).  Aside from its statutory review for sentencing errors, the Idaho Supreme Court has not departed from this general rule in capital cases.  The cases that McKinney cites do not support a contrary rule.

In *State v. Osborn*, 631 P.2d 187 (Idaho 1981), the Idaho Supreme Court reviewed an error that was raised for the first time on appeal as part of its sentencing review under § 19-2827.  *Id*. at 191-92.  The *Osborn* court did not hold that it would expand its review in every capital case to include an exhaustive

---

[4]  These include the following: Claims 1(g)(m)(n)&(o) (matters outside of the direct appeal record), Claim 2 (error during post-conviction appeal and, if broadly construed, direct appeal), Claim 4 (error during post-conviction appeal), Claim 8 (outside of the record on appeal), Claim 9 (outside of the record), Claim 17 (outside of the record), Claim 26 (general attack), Claim 27 (general attack and matters outside of the record), and Claim 33 (error during appeal).

**Memorandum Decision and Order - 14**

independent search for trial error when such error was not raised on appeal.  At most, the court noted that it will be vigilant in capital cases to consider errors that may not have been technically preserved below, but that have been raised on appeal, which is generally consistent with Idaho's fundamental error doctrine.  *See, e.g., State v. Garcia*, 594 P.2d 146, 148 (Idaho 1979).

Admittedly, in *State v. Leavitt*, 755 P.2d 599 (Idaho 1989), the Idaho Supreme Court noted that it had "carefully reviewed the record for any indication of prejudicial error occurring at trial, regardless whether or not error has been specifically asserted by the defendant."  *Id*. at 602.  This expansive language appears to be to an anomaly.  While the Idaho Supreme Court has consistently acknowledged its duty to review the imposition of a death sentence as required by § 19-2827, McKinney has cited no capital case other than *Leavitt* that clearly indicates that the court has a similar mandatory duty to search for unassigned *trial* error.  *See, e.g., State v. Lankford*, 747 P.2d 710 (Idaho 1987) ("[e]rror will not be presumed on appeal but must be affirmatively shown by the appellant"); *State v. Pizzuto*, 810 P.2d 680, 688 (Idaho 1991) (same).

Finally, to the extent that McKinney relies on *Crane Creek County Club v. City of Boise*, 826 P.2d 446 (Idaho 1990), a non-capital, civil case, this reliance is misplaced.  Merely because the Idaho Supreme Court recognized in *Crane Creek*

**Memorandum Decision and Order - 15**

that it had the inherent authority to reach an exceptional unassigned error in that case does not mean that the court implicitly does so in every case, or, more importantly, that it implicitly did so in McKinney's case.  After *Crane Creek*, the Idaho appellate courts have consistently reaffirmed the principle that the appellant must demonstrate error.  *See State v. Fortin*, 859 P.2d 359, 363 (Idaho Ct. App. 1993) (the court will not "search the record for error"); *Miller v. Callear*, 91 P.3d 1117, 1122 (Idaho 2004) (same);  *Stewart v. Sun Valley Co.*, 94 P.3d 686, 689 (Idaho 2004) (same).

For all of these reasons, this Court concludes that the Idaho Supreme Court's automatic review in capital cases is limited to sentencing errors.

C.    Conclusion

McKinney either fairly presented, or the Idaho Supreme Court considered as part of its mandatory sentencing review, the following claims:  1(a)(d)&(f) (limited to counsel's failure to investigate and present mitigating evidence at sentencing regarding McKinney's abuse as a child), 3, 5, 6,10, 11, 12, 13, 14, 15, 16, 18 (only as it relates to sentencing), 25 (as it relates to sentencing), 29, 30, 31, 32, and 35.

## III.

## PROCEDURAL DEFAULT

A habeas petitioner's failure to raise a constitutional claim in state court will

result in a procedural default if the petitioner would now be barred from raising the claim under the state's procedural rules. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). In addition, a habeas claim is defaulted when the petitioner raised the claim in state court, but the state court denied or dismissed the claim after invoking a procedural bar that is independent of federal law and is adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A procedurally defaulted claim will not be considered unless the petitioner can establish cause for the default and actual prejudice, or he can show a miscarriage of justice in his case, which means that he is actually innocent. *Id*. at 750.

In the present case, McKinney's remaining claims were not fairly presented to the Idaho Supreme Court at the correct time, and were not implicitly considered by that court during direct appeal. These claims are now procedurally defaulted. For the majority of the claims, the Idaho Supreme Court invoked Idaho Code § 19-2719, which, as applicable to this case, operated to bar claims about which McKinney knew or reasonably should have known at the time of his initial post-conviction proceeding.[5] McKinney contends that the state procedural bars,

---

[5] The defaulted claims are as follows (with citation to the Idaho Supreme Court's invocation of the state procedural bar):

Claims 1(b)(c)(e)(g)-(p): Various allegations of ineffective assistance of trial counsel (not fairly presented on appeal at the proper time to the Idaho Supreme Court and barred by the waiver provision of Idaho Code § 19-2719(5)); *See McKinney III*, 992 P.2d at 157;

**Memorandum Decision and Order - 17**

particularly application of Idaho Code § 19-2719, are inadequate to preclude

federal review.  Based upon the following, the Court disagrees.

---

Claim 2:  The Idaho Supreme Court failed to properly define mitigation (barred by procedural rule that an issue not raised in the district court would not be considered on appeal); *Id*. at 158;

Claim 4:  The Idaho Supreme Court unconstitutionally applied the harmless error doctrine (never presented in state court, now time-barred);

Claim 7: The prosecution failed to disclose exculpatory evidence (waived under § 19-2719); *Id*. at 155-56;

Claim 8: The prosecution took inconsistent positions at McKinney and Small's trials (waived under § 19-2719); *Id*. at 157

Claim 9: The State failed to correct erroneous conclusions from the evidence (waived under § 19-2719); *Id*. at 157

Claim 17:  McKinney's statements to Dovey Small's attorney, which were introduced at the sentencing hearing, should have been excluded because the attorney was acting as a state agent (waived under § 19-2719); *Id*. at 157;

Claim 18: The trial court denied McKinney the assistance of a mental health expert at trial (waived under § 19-2719); *Id*. at 157;

Claim 19: McKinney's sentence for robbery is unconstitutional (barred by statute of limitations for bringing non-capital claims in Idaho Code § 19-4902); *Id*. at 153-54;

Claim 20: McKinney's conspiracy convictions are unconstitutional (barred by statute of limitations for bringing non-capital claims under § 19-4902); *Id*. at 153-54;

Claim 21: The firearms enhancement is unconstitutional (barred by statute of limitations for bringing non-capital claims under § 19-4902); *Id*. at 153-54;

Claim 22: The reasonable doubt jury instruction is defective (waived under Idaho Code § 19-2719); *Id*. at 157 ;

Claim 23: The verdict forms were defective (waived under § 19-2719); *Id*. at 157;

Claim 24: The trial court failed to give a lesser included offense instruction for voluntary manslaughter (waived under §  19-2719); *Id*. at 157;

Claim 25: The jury was allowed to consider a prior, unsubstantiated murder at trial (waived under § 19-2719); *Id*. at 157;

Claim 26:  Judge sentencing in capital cases is arbitrary and capricious (waived under § 19-2719); *Id*. at 157;

Claim 27: They systemic disparity in economic resources between the State and defendant are unconstitutional (waived under § 19-2719); *Id*. at 157;

Claim 28: McKinney's conditions of confined are cruel and unusual (waived under § 19-2719); *Id*. at 157;

Claim 33: The Idaho Supreme Court's proportionality review is unconstitutional (waived under § 19-2719); *Id*. at 157;

Claim 34:  Ineffective assistance of appellate counsel (not fairly presented to the Idaho Supreme Court at the appropriate time and barred by § 19-2719); *Id*. at 157-58 .

**Memorandum Decision and Order - 18**

A.    Adequacy of the State Procedural Bars

A state procedural rule will prevent habeas review only when the state rule is independent of federal law and is adequate to support the judgment.  *Wells v. Maas*, 28 F.3d 1005, 1010 (9th Cir. 1994).  For a state rule to be adequate to prevent federal review, it must be "clear, consistently applied, and well-established" at the time of the purported default.  *Id.* at 1010.  A federal court should not enforce a bar that was not firmly established and regularly followed at the time that the petitioner should have raised his claims.  *Ford v. Georgia*, 498 U.S. 411, 423 (1991) (noting that a bar should not be honored if the defendant was not "apprised of its existence" at the time of the default) (citation omitted).  Procedural default is in the nature of an affirmative defense, and the burden is initially on the respondent to plead the existence of an independent and adequate state procedural bar.  *See Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  If the petitioner then calls  into question the adequacy of the state rule, the ultimate burden rests with the respondent.  The Court finds that Respondent has satisfied that burden here.

1.    Idaho Code § 19-2719 Was Firmly Established and Has Been Consistently Applied

On April 2, 1984, the Idaho Legislature enacted special post-conviction statutory provisions for capital cases with the express purpose of eliminating

**Memorandum Decision and Order - 19**

"unnecessary delay in carrying out a valid death sentence."  *See* Idaho Code § 19-2719.  These provisions supplemented the Uniform Post-Conviction Procedure Act (UPCPA), Idaho Code §§ 19-4901 – 4909, but to the extent that they conflict with the UPCPA, the special capital provisions control.

The more specific provisions contain a shorter statute of limitations and a strict waiver provision.  In particular, a convicted capital defendant must bring all known or reasonably knowable legal or factual challenges to his conviction or sentence within 42 days of the filing of judgment.  Idaho Code § 19-2719(3).  A capital defendant who does not bring all known or reasonably knowable claims within 42 days of judgment is deemed to have waived those claims, and Idaho courts have no power to consider such claims in later proceedings.  Idaho Code § 19-2719(5).  Consequently, a successive petition containing new claims will only be considered if the defendant makes a prima facie showing that he could not have reasonably known of the claims within the statute's time limitations, and, further, that he presented the claims within a reasonable time after they could have been discovered.  *See Paz v. State*, 852 P.2d 1355, 1357 (Idaho 1993) (noting that the statute places a "heightened burden" on the defendant to plead the limited exception for previously unknown claims).

In the present case, Idaho Code § 19-2719 was relatively new when

**Memorandum Decision and Order - 20**

McKinney filed his first application for post-conviction relief on November 5, 1984, and when he filed his amended petition on March 14, 1985.  Despite the fact that the statute had recently been enacted, the Court concludes that the procedural bar was firmly established at that time.  The legislative intent to expedite capital cases is clearly expressed in the statute.  More to the point, the plain statutory language that all known or reasonably knowable claims must be raised in one post-conviction proceeding sends a clear signal to a convicted capital defendant that he must include all claims in his first petition or they will be deemed waived.  *See O'Dell v. Netherland*, 95 F.3d 1214, 1241 n.20 (4th Cir. 1996) (noting that if a procedural bar is based upon a clear and unambiguous statute, it is firmly established at the time that the statute was enacted) *affirmed on other grounds by* 521 U.S. 151 (1997).

To the extent that there was any ambiguity regarding the statute's specific application to McKinney's case, the Idaho Supreme Court clarified the matter when it issued its Remittitur and Order at the conclusion of McKinney's direct appeal in 1984.  The Idaho Supreme Court specifically ordered the district court to withhold issuing a death warrant for 42 days so that McKinney could file "any post-conviction challenge, as required by I.C. § 19-2719(2) and (3)."  *State's Lodging C-17*, p. 144.  The court further noted that any new petition must be filed

**Memorandum Decision and Order - 21**

and processed "in accordance with I.C. § 19-2719 as created by Chapter 159 of the 1984 Session Laws." *State's Lodging C-17*, pp. 145. McKinney's appointed counsel was aware of these requirements; in accordance with the order, counsel filed an initial application for post-conviction relief on McKinney's behalf within 42 days. *See State's Lodging C-17*, pp. 147-48; *State's Lodging D-22*, p. 1. Therefore, McKinney was reasonably on notice that he must include all claims in his first post-conviction proceeding or those claims would be waived.

This Court further concludes that the state courts have consistently applied the procedural bar since the time of McKinney's default. In particular, the Idaho Supreme Court has repeatedly refused to consider successive post-conviction claims when the petitioner fails to demonstrate that the claims fall within the limited exception in § 19-2719(5). *See, e.g., Fetterly v. State*, 825 P.2d 1073 (Idaho 1991); *Pizzuto v. State*, 903 P.2d 58, 60-61 (Idaho 1995); *Creech v. State*, 51 P.3d 387 (Idaho 2002); *Porter v. State*, 80 P.3d 1021 (Idaho 2003); *see also Rhoades v. State*, 17 P.3d 243 (Idaho 2000) (successive claims not raised within a reasonable time of discovery); *Sivak v. State*, 8 P.3d 636, 644 (Idaho 2000) (successive claim barred under § 19-2719(5)(b) as resting upon cumulative evidence).

McKinney relies on *Dunlap v. State*, 961 P.2d 1179 (Idaho 1998), to

**Memorandum Decision and Order - 22**

demonstrate inconsistency, but *Dunlap* will not bear the weight that McKinney places upon it.  In *Dunlap*, the Idaho Supreme Court determined that the petitioner had made a prima facie showing that he could not have known that his attorneys failed to file any post-conviction claims on his behalf within the statutory deadline. *Id*. at 1182.  The court then held that because the petitioner had filed a petition within a reasonable time of this discovery, his case fell within the exception to the waiver provisions of the statute.  *Id*.

Insofar as *Dunlap* may depart from precedent, it is limited to the unusual circumstances in that case, which involved the late filing of a first post-conviction petition, rather than a successive petition containing new claims.  At most, it represents an act of grace by the Idaho Supreme Court in excusing a potential waiver on the unique facts of the case.  In a similar manner, the Idaho Supreme Court's decision in the present case to consider the merits of a single new claim – the length of confinement claim – constitutes a rare exception to an otherwise consistently enforced procedural rule.  *McKinney III*, 992 P.2d at 151.

In short, Respondent has shown that McKinney was fairly apprised of the procedural rule's existence at the time of the default and that the Idaho courts have consistently and strictly applied the rule since that time.  To the extent that *Dunlap* or *McKinney III* (solely in relation to the length of confinement claim) may deviate

**Memorandum Decision and Order - 23**

in some small respect from the otherwise steady drumbeat of strict enforcement,

they are minor exceptions that do not render the procedural bar inadequate to

support the state's judgment. *See Wood v. Hall*, 130 F.3d 373, 378 (9th Cir. 1997)

(the exercise of judicial discretion in imposing a procedural rule, or the occasional

act of grace, will not make a state court's invocation of the rule inadequate).

2.    Idaho Code § 19-2719 is Constitutional

McKinney contends that even if the statute has been consistently enforced,

the shortened time limitation and the strict waiver provision violate his rights to

due process and equal protection and cannot serve as a valid procedural bar. The

Court adheres to its previous decision the statute is constitutional. *See, e.g.,*

*Fetterly v. Paskett*, 747 F. Supp. 594, 600-01 (D. Idaho 1990) *remanded on other*

*grounds* by 997 F.2d 1295 (9th Cir. 1993).

3.    *Hoffman* is Inapplicable

McKinney next asserts that the Ninth Circuit's decision in *Hoffman v. Arave*,

236 F.3d 523 (9th Cir. 2001), saves all of his defaulted claims of ineffective

assistance of counsel. The Court disagrees.

In *Hoffman*, the petitioner was represented by the same attorneys during his

trial, his initial state post-conviction matter, and during the consolidated appeal

from those proceedings. *Id*. at 528, 532-33. The Ninth Circuit held that because

counsel could not have been expected to argue their own ineffectiveness at the time that they were required to do so, strict enforcement of Idaho Code § 19-2719 frustrated the petitioner's right to raise that particular constitutional claim in state court. *Id.* at 534-36. Consequently, the petitioner was allowed to go forward with his ineffectiveness claims in federal court.

This case does not present a *Hoffman* situation. Unlike *Hoffman*, McKinney was represented by different counsel during his first post-conviction proceeding, and his ability to raise claims of ineffective assistance of trial and appellate counsel in state court was not impaired. Indeed, McKinney's post-conviction counsel did raise several such claims, and included selected claims in the subsequent appeal to the Idaho Supreme Court.

B.    Idaho's Fundamental Error Review

McKinney contends that the Idaho Supreme Court has applied its fundamental error review doctrine inconsistently in capital cases, rendering any procedural default inadequate. *Petitioner's Brief Regarding Procedural Default Issues*, p. 38; *Petitioner's Reply*, p. 7. This argument is unavailing.

The fundamental error doctrine is a narrow exception to the general rule in Idaho that all appellate issues must be properly preserved for review by an objection in the lower court. *See, e.g., State v. Broadhead*, 84 P.3d 599, 603 (Idaho

Ct. App. 2004).  In other words, an appellate court retains the discretion in a criminal case to consider an error that is raised for the first time on appeal, if the court deems that error to be fundamental.  *Id*.  But, as this Court has noted herein, the Idaho Supreme Court has not broadened the scope of fundamental error review in capital cases to reach issues that have not been presented to it on direct appeal.

As a result, McKinney's argument that the Idaho Supreme Court has inconsistently applied the fundamental error review in capital cases – reaching the merits of constitutional claims raised for the first time on direct appeal in some cases but not others – is essentially the same as an argument that the Idaho Supreme Court has inconsistently applied its procedural rule that unpreserved errors will not be reviewed for the first time on appeal.  Such an argument, however, has relevance only if the state court invoked that particular state procedural rule.  Here, the Idaho Supreme Court did not bar any of McKinney's claims during his direct criminal appeal based upon his failure to object or to otherwise preserve the issue in the trial court.  *See State v. McKinney*, 687 P.2d 570 (Idaho 1984).  Accordingly, McKinney's argument is inapposite.

C.    Conclusion

The Court concludes that McKinney has procedurally defaulted the following claims, based upon independent and adequate state procedural bars:

**Memorandum Decision and Order - 26**

Claims 1(b)(c)(e)(g)-(p), 4, 7, 8, 9, 17, 18 (trial claim), 19, 20, 21, 22, 23, 24, 25 (trial claim), 26, 27, 28, 33, 34.

## III.

## CAUSE AND PREJUDICE

A petitioner has an opportunity to excuse a procedural default if he can establish valid cause for the default and actual prejudice as a result of the constitutional error. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show cause, the petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Id.* at 488 (1986). To show prejudice, the petitioner bears the burden of demonstrating that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner cannot establish cause and prejudice, a federal court may still hear procedurally defaulted claims if the petitioner can show that a miscarriage of justice has occurred in his case. *Murray*, 477 U.S. at 495-96. A miscarriage of justice in these circumstances means the conviction of someone who is actually innocent. *Id.*

A.   Ineffective Assistance of Counsel

McKinney first asserts that the cause of the default of his habeas claims is

ineffective assistance of his trial and appellate counsel.  The Court is unpersuaded by this argument.

Ordinary attorney negligence will not provide cause to excuse the default of another habeas claim; only attorney error that amounts to an independent violation of a defendant's constitutional right to the effective assistance of counsel may establish cause.  *Coleman v. Thompson*, 501 U.S. 735, 753 (1991).  In addition, the ineffective assistance claim upon which the petitioner relies to excuse the default of another habeas claim must have, itself, been properly exhausted and free of procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000).

McKinney fairly presented only three allegations of ineffective assistance of trial counsel to the Idaho Supreme Court at the correct time: counsel's failure to object to the jury's handling of the weapon during trial; counsel's failure to investigate and present mitigating evidence at the sentencing hearing; and counsel's failure correct misinformation in the PSI.  In addition, although the Idaho Supreme Court noted in the second post-conviction appeal that McKinney had raised a claim of ineffective assistance of appellate counsel in his first post-conviction proceeding, the Supreme Court did not find that McKinney had raised the claim on *appeal* in the first post-conviction matter.  *Id.* at 157-58.  In fact, McKinney did not do so.  *See State's Lodging E-26.*  Thus, with the exception of

**Memorandum Decision and Order - 28**

the three claims of ineffective trial counsel, all other claims of ineffective

assistance are procedurally defaulted themselves and, under *Edwards*, will not

excuse the default of any other habeas claim.

McKinney next argues that the default of several claims during the first post-

conviction proceeding is attributable to the inexperience and ineffectiveness of

post-conviction counsel Jerry Woolf.  This argument also fails.  A habeas

petitioner does not have a federal constitutional right to the effective assistance of

counsel during state post-conviction proceedings, and, consequently, the petitioner

cannot rely upon post-conviction counsel's alleged deficiencies as cause.

*Pennsylvania v. Finley*, 481 U.S. 551 (1987); *see also Bonin v. Vasquez*, 999 F.2d

425, 430 (9th Cir. 1993).

In a related argument, McKinney contends that Woolf labored under

conflicts of interest, based primarily upon his employment as a prosecuting

attorney for Bonneville County at the time that McKinney was tried.[6]  McKinney

points to one incident in which Woolf appeared, as a representative of Bonneville

County, at an interview between the attorneys who prosecuted McKinney and a

Bonneville County jail inmate who claimed that McKinney had made statements to

---

[6]  Though the murder was committed in Butte County, the venue of McKinney's trial was changed to Bonneville County.  The attorneys who prosecuted McKinney at trial were Tom Moss, a special prosecutor, and Michael Kennedy, a deputy attorney general.

**Memorandum Decision and Order - 29**

him.  McKinney also notes that a member of Woolf's future law firm represented the inmate during that conference.  Regardless of this one incident, McKinney has not shown that Woolf or members of his law firm were part of the prosecution team, in any capacity, that actually tried McKinney.

This Court finds no evidence in the record that Woolf's representation of McKinney was affected in any way because of his status as a former prosecutor or because he or a member of his firm owed a duty of loyalty to another client.  *See Mickens v. Taylor*, 535 U.S. 162, 165 (2002) (a true conflict of interest is one that adversely affected the attorney's performance).  Regardless, this claim fails as a matter of law.  Because McKinney did not have a Sixth Amendment right to the assistance of counsel during his state post-conviction proceedings, his allegation that Woolf suffered from a conflict of interest will not excuse the default of any habeas claims during those proceedings.  *See Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996).  Such a claim also fails when recast as a due process violation under the Fourteenth Amendment.  *Id.*

McKinney alternatively contends that *Manning v. Foster*, 224 F.3d 1129 (9th Cir. 2000), supports his argument that Woolf's purported conflict excuses the default.  McKinney's reliance on *Manning* is misplaced.

In *Manning*, the defendant's trial counsel failed to file a notice of appeal and

then led the defendant to believe, incorrectly, that he could not raise a claim of ineffective assistance on that particular ground in a state post-conviction proceeding.  The defendant forfeited the ineffectiveness claim in the state courts, raising it instead in a federal habeas petition, and it was dismissed as procedurally barred.  *Id*. at 1131-32.

On appeal, the Ninth Circuit determined that counsel's interest in suppressing his own ineffectiveness conflicted with his client's interest in raising that claim, a conflict that it found to be "self-evident."  *Id*. at 1134.  The court then held that if the attorney had actively interfered with the petitioner's right to access state post-conviction relief proceedings as a result of his conflict, and the attorney was not authorized to act on the petitioner's behalf during such proceedings, then the petitioner would have shown valid cause for the default of his habeas claim. *Id*. at 1135.

In the present case, Woolf did not represent McKinney during his trial or his direct appeal.  Thus, unlike *Manning*, Woolf did not have an interest in suppressing a claim of his own ineffectiveness that conflicted with his client's interest in raising such a claim.  Furthermore, there is no indication that Woolf interfered with McKinney's right to pursue state post-conviction remedies, or that he otherwise acted without his authorization during those proceedings.  To the contrary, Woolf

**Memorandum Decision and Order - 31**

actively represented McKinney with his consent, including during the evidentiary hearing at which McKinney testified and on appeal from the denial of the petition. *State's Lodging D-22*, p. 95; *State's Lodgings D-23 & E-26*. *Manning* is not applicable to this case.

In sum, McKinney has failed to show ineffective assistance of counsel, or an alleged conflict of interest, adequate to establish valid cause for the default of any of his habeas claims. With the exception of Claim 7 – a *Brady* claim – McKinney does not offer any other cause for the default. Therefore, there is no need to determine prejudice. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

      B.     The <u>*Brady*</u> Claim

In Claim 7, McKinney alleges that the State withheld exculpatory evidence that is material to guilt or punishment, in violation of his constitutional right to due process of law as set out in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Idaho Supreme Court determined that McKinney waived the claim because he knew or reasonably should have known of the facts that supported it at the time of his first post-conviction proceeding. *McKinney III*, 992 P.2d at 154-55. McKinney contends that the State's concealment of the evidence provides valid cause for his failure to raise the claim in state court, and he asserts that he was actually prejudiced as a result.

**Memorandum Decision and Order - 32**

The Court will reserve its ruling on Claim 7 because the cause and prejudice inquiry for a defaulted *Brady* claim parallels, in certain key respects, an analysis on the merits of a substantive *Brady* claim.  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (holding that cause is established if the prosecution suppressed exculpatory evidence and prejudice is shown when the evidence is material to guilt or punishment).  In addition, McKinney currently has an appeal pending in the Idaho Supreme Court in which he has raised a new *Brady* claim that may be relevant to the analysis.  The Court notes that although it is deferring its ruling, the federal case will not be stayed at this time to await the completion of the pending state court matter.

C.     Actual Innocence

Finally, McKinney claims that he is actually innocent and that the failure to reach the merits of the defaulted claims will result in a miscarriage of justice.  The United States Supreme Court has recently held that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default."  *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004).  This rule of avoidance is grounded on principles of judicial restraint.  The *Haley* Court noted that the actual innocence exception, as a judge-made doctrine,

**Memorandum Decision and Order - 33**

should be expanded only when necessary.  *Id*. at 394-95. The Court further noted

that such claims are often accompanied by complex legal questions that must be

avoided, if possible.  *Id*. at 395-96.

In light of *Haley*'s rule of avoidance, the Court finds that the actual

innocence issue is premature.  Should McKinney fail to establish any other basis

for relief during these proceedings, the Court will then consider whether he has

satisfied the miscarriage of justice standard for excusing a procedural default.

## IV.

## CONCLUSION

Based upon the foregoing, the Court concludes that Petitioner may proceed

with the following claims:  Claims 1(a)(d)&(f) (limited to the extent that it alleges

counsel's failure to investigate and present mitigating evidence at sentencing

regarding McKinney's abuse as a child), 3, 5, 6, 10, 11, 12, 13, 14, 15, 16, 18

(sentencing claim only), 25 (sentencing claim only), 29, 30, 31, 32 and 35.

The Court further concludes that following claims are procedurally

defaulted, without a showing of cause and prejudice: Claims 1(b)(c)(e)(g)-(p), 2, 4,

8, 9, 17, 18 (as it relates to trial), 19, 20, 21, 22, 23, 24, 25 (trial claim), 26, 27, 28,

33, 34.  Because the actual innocence issue is unresolved, these claims will not be

dismissed at this time, but the Court's decision regarding all other procedural

default matters with respect to these claims is final.  In the event that McKinney fails to receive relief on a non-defaulted claim, the Court will then determine whether he can satisfy the miscarriage of justice standard.

Finally, Claim 7 is procedurally defaulted, but the Court will reserve ruling on the cause and prejudice issue with respect to that claim.

## V.

## ORDER

IT IS FURTHER ORDERED that within 45 days of the date of this Order, Petitioner shall file a renewed motion for evidentiary hearing.  Respondent shall file a response within 45 days of receiving the motion.  Petitioner may file a reply brief within 20 days of receiving the response.

IT IS FURTHER ORDERED that the case caption shall be amended to reflect that Greg Fisher has been substituted as the proper respondent in this matter.

DATED:  **June 24, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 35**